Johnson, J.
(After making the foregoing statement.) There is no doubt, that under the deed from Lewis Ciples to Francis Gr. Delesseline, of the 11th May,-1811, Francis A. Delesseline had a vested interest in' the Camden property, to the extent of one half for life, with a remainder in fee of the whole upon the death of his wife without issue ; and it seemed to be conceded on the argument, that the lien of the judgments due the Bank would have attached at least on his interest for life: and the power given to the trustee by that deed, to sell and dispose of that property, being limited to a re-investment of the proceeds in other property, to the “ same trusts and conditions, and limitations” as are expressed in that deed, the Chancellor held, that Francis A. Delesseline had no authority to direct the investments of it to other uses, or upon other conditions and limitations, and therefore directed that the trusts declared in the deed from Mr. Milliken to John G. Spidle, the trustee for the house and lot in Wentworth street should be reformed in such a manner as to correspond with those on the deed from Lewis Ciples to Francis G-. Delesseline ; and the foundation of the Circuit Court decree is, that the *187 deed thus reformed would give to Francis A. Delesseline an interest or estate in the house and lot in Wentworth street, on which the lien of the judgment of the Bank would attach, and that being older than the assignment to the plaintiffs, was entitled to the priority. As before remarked, the interest which Francis A. Delesseline took in the Camden property, under the deed from Lewis Ciples to Francis Gr. Delesseline, was one half for the joint lives of himself and his wife, with a remainder in fee of the whole, upon the contingency of the wife’s dying before him without issue. This, by the sale to Elizabeth Rogers, was converted into money, and as between Francis A. Delesseline, and his wife, and their trustee, I cannot conceive of any possible legal obstruction to his making any disposition* of his interest in it that he might think proper, provided p^o it did not operate to the prejudice of the wife. He was under no L legal disability, nor was there any imposed on him by the deed: indeed I cannot conceive how it is possible for one, by his own act, to put it out of his power to dispose of that which belongs to him. His assignment of this fund to the trustee, Spidle, by the deed of 3d July, 1830, does not deprive the wife of any interest which she took under the deed from Lewis Ciples to Francis Gr. Delesseline; on the contrary, it confers on her the sole power of directing the investment of it, instead of sharing it with him — it gives her the whole, instead of a moiety during life — and, as in the latter deed, limits over the remainder to her in fee, in the event of her surviving him ; there cannot therefore be any question about the power of Francis A. Delesseline to have made this disposition of the funds. If the wife had survived, and this had been a bill to subject the property to the payment of the debts of Francis A. Delesseline, another and a very different question would have arisen; but her claims are now out of the way, and this is a contest between creditors for priority, and having shown that the power of Francis A. Delesseline, over the fund in bank to the extent of his interest, on which there could be no legal lien, was absolute, it follows that the rights of the creditors must be determined by the interest which he had in the house and lot in Wentworth street under the deed from Milliken to Spidle. By referring to the dates, it will be seen that when the judgment of the Bank was obtained on the 21st April, 1828, the fund was in bank, and that it was invested by the trustee in the house and lot in Wentworth street, on the 5th July, 1830— that Francis A. Delesseline assigned his interest in it to the plaintiffs on the 20th June, 1832, and that the remainder became vested in Francis A. Delesseline, on the death of his wife shortly after — and out of this state of things the following questions arise :
1st. Whether Francis A. Delesseline had such an interest in the house and lot, as was subject to the lien of the judgment of the Bank ?
2d. Whether, if he had not, it was bound by the assignment made by him to the plaintiffs, for the payment of the money due them ? By the terms of the deed from Milliken to Spidle, the trusts were limited to the use of Amelia Delesseline, the wife, for life, and at her death to her issue, and on her death without issue, over to Francis A. Delesseline in fee; so that all the interest which he had, was a fee simple dependent on the contingency of his wife dying *without issue, he surviving — an interest or estate falling directly within Mr. Fearne’s definition of a contingent L remainder, as contra-distinguished from a vested remainder — a remainder *188 in an estate so limited, as to depend on an event or condition which may never happen or be performed. — Fearne on Rem. 1. And I feel some difficulty in demonstrating that this is not such an estate or interest as would be subject to the lien of a judgment, the proposition presenting itself to my mind as one which is self-evident. Wherever there is a lien, it follows necessarily, that the thing to which it attaches may be sold in satisfaction of the judgment; it must therefore have a present existence and visible form to enable the sheriff to take possession of, and transfer it to the purchaser, if it is capable of manual delivery. It is for this reason that choses in action are not the subject of levy and sale; they have in themselves no visible form, or tangible existence, and are the mere representatives of something more substantial, and are not within the reach of the sheriff, nor is he capable of transferring them. Hopeless indeed would be the condition of an unfortunate debtor, if not only what he had, but also what he might, by any possibility afterwards acquire, was the subject of execution and sale: purchasers would not readily put a high estimate on such possibilities, and the danger of sacrifices would itself oppose a strong reason for not subjecting them to sale. No case directly in point has been cited, either from the English or American authorities, and it is, I think, a reasonable inference, that it has been regarded as admitting of no doubt; indeed, I did not understand the counsel for the Bank, as relying on the binding efficacy of their judgment, until the life estate of Mrs. Delesseline was terminated by her death. The case of Bozart v. Parry et al., 1 Johnson’s Ch. Rep. 52, bears however some analogy to it. There A. being seized of land, agreed to sell to B., and received a part of the consideration, and undertook to make titles to B., when he should pay the balance. Two years after-wards, the balance still being unpaid, B. assigned A.’s contract to S., and it was held that, although S. might have compelled the specific performance of the contract, yet his interest in the land was a mere equity, and not the subject of levy and sale under an execution against him at the suit of a third person ; and that judgment was affirmed on an appeal to the Court of Errors. But Francis A. Delesseline could not, himself, have trans-*2421 fen’e(^ this remainder by a *common law conveyance of lease and -* release, upon the principle that one cannot grant that which he does not possess. Fearne on Rem. 461, 537. And it follows necessarily, that the sheriff, the agent appointed by law to represent him in making the title to one who purchased under a sale by fieri facias, is incompetent to do so; the judgment could not therefore have had alien, because it would have been inoperative. It seems however to be well settled, that although a contingent remainder is not transferable by the ordinary common law conveyance, yet an assignment of it for a valuable consideration yill be supported in equity as an agreement, which will be specifically enforced. Of this, the case of Wright v. Wright, 1 Ves. 409, cited at the bar, will suffice as an example. There a testator devised lands to his two daughters and their heirs; but that if either of them should marry without the consent of his executors, the daughter so marrying should only have an estate for life therein, and if either of them should die unmarried, to his son, R. in fee, on his paying £500 to the surviving daughter. R., the son, in the lifetime of both the daughters, in consideration of love and affection, granted his interest to his young *189 est son, G.; — R., the son, first died, and afterwards one of the daughters died unmarried, and upon a bill filed by the eldest son of R. claiming the estate, as heir at law to his father on the payment of the £500 to .the surviving daughter, it was held by Lord Hardwicke, that he was bound by the assignment of the father to the youngest son, G: and he remarks, that the Court admits the contingent interest of a term for years to be disposed of for valuable consideration, though the law does not, and that there was no difference between allowing the assignment of the possibility of a chattel real, and the possibility of an inheritance.
There is nothing novel or extraordinary in the doctrine of this and other cases like it, several of which are collected by Fearne in his Treatise on Executory Devises, p. 439, 522, et seq. All that is necessary to a valid contract is, that it should be made by parties competent to contract, that there should be a good consideration, and that the thing to be done or performed should be lawful and possible; and I cannot perceive why one may not bind himself to do, or perform an act, his power over • which depends on a contingency, if that contingency should happen, as well to do or perform one at a future day, which he is competent to do at the time. If the contingency does happen, the moral obligation is precisely the *same, and it is not opposed by any rule of positive obligation, and equity will enforce its execution precisely to the ■- same extent. I am therefore very clearly of opinion, that Francis A. Delesseline was bound by his assignment to the plaintiffs, and that equity would have enforced that contract against him.
But it has been insisted in the defence, that conceding the assignment of Delesseline to the plaintiffs to be valid, yet, being the assignment of a mere possibility, no lien would attach until the contingency on which it depended took place — that is to say, the death of Mrs. Delesseline without issue — that in the sume instant the lien of the judgment attached, the remainder having become vested in Francis A. Delesseline, and being the oldest, ought to be preferred : and the defence has been made to rest principally on this ground. There is some plausibility in this argument, but it will not bear examination. It has been before shown, that the judgment had no lien on the property until the remainder vested in Francis A. Delesseline. It attached, then, in virtue of the title in him, and that was burdened with the equity arising out of the assignment to the plaintiffs, a claim as meritorious as that of the Bank. Deriving their right from Delesseline, the Bank could not be in a better situation than he would have been. Suppose that in the instant the remainder vested, he had granted it to the Bank with notice of the prior assignment to the plaintiffs, would that have superseded the prior equity of the plaintiffs ? Certainly not. And what magic is there in the lien of a judgment, in itself a mere equity, which gives a higher claim to the property on which it attaches than would a conveyance in fee-simple ?
It is therefore ordered aiid decreed that the decree of the Circuit Court be reversed, and that it be referred to the Master, to ascertain whether any, and what amount remains due on the note endorsed by the plaintiffs for Francis A. Delesseline, and discounted at the Branch Bank in Georgetown ; and whether any, and what amount of principal or interest has been paid by the plaintiffs, on account of the said note; and that the plaintiffs be credited in the books of the said Bank with the amount of *190 the principal and interest, if any, which may remain due and owing thereon, and that the defendants do pay to the plaintiffs the amount, if any, which they may be found to have paid on account of the principal and interest of the said note — costs to be paid by the defendant.